### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **BRENDA LOU HERRIAGE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.  14-1345** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

### <u>MEMORANDUM AND ORDER</u>

Plaintiff  Brenda Lou Herriage seeks disability insurance benefits pursuant to Title II of the Social Security Act.  An Administrative Law Judge ("ALJ") found that plaintiff was not disabled, and that finding stands as the final decision of the Commissioner of Social Security ("Commissioner").  Plaintiff argues that the ALJ's decision is not supported by substantial evidence in the record.  For the reasons stated below, the court affirms the Commissioner's decision.

### I.   Legal Standard

The court must determine whether the Commissioner's final decision is "free from legal error and supported by substantial evidence."  *Walls v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).  Accordingly, this court applies a two-pronged review of the ALJ's decision: (1) Are the factual findings supported by substantial evidence in the record? (2) Did the ALJ apply the correct legal standards? *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted).  "Substantial evidence" is a term of art, meaning "more than a mere scintilla" and "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Hunter v. Astrue*, 321 F. App'x 789, 792 (10th Cir. 2009) (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007)).  When

evaluating whether the standard has been met, the court is limited; it may neither reweigh the evidence nor replace the ALJ's judgment with its own. *Bellamy v. Massanari*, 29 F. App'x 567, 569 (10th Cir. 2002) (citing *Kelley v. Chater*, 62 F.3d 335, 337 (10th Cir. 1995)).   On the other hand, the court must examine the entire record—including any evidence that may detract from the ALJ's decision. *Jarmillo v. Massanari*, 21 F. App'x 792, 794 (10th Cir. 2001) (citing *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994)).

## II.   Analysis

Plaintiff was fifty-three years old on the date of her disability hearing.   Plaintiff has a twelfth-grade education.  Her past relevant work was as a retail manager with job duties of scheduling, price changes, payroll, bank deposits, handling freight, cashiering, and stocking shelves, occasionally lifting up to sixty pounds.  Plaintiff filed an application for disability insurance benefits, alleging degenerative disc disease of the lumbar  spine,  brain  aneurysm,  status post-op,  with  residual,  severe,  intractable headaches.  (Doc. 9-3 at 14.)

The ALJ denied plaintiff's application.  (*Id.* at 21.)  In making her decision, the ALJ found plaintiff had the severe impairments of degenerative disc disease of the lumbar spine and a history of brain aneurysm with past surgery and residual headaches (*id.* at 14), but the ALJ found plaintiff's allegations of disability stemming from these impairments were not supported by the medical and other evidence, (*id.* at 17).  The ALJ found plaintiff retained the Residual Functional Capacity (RFC) to perform a range of light work and that, due to the pain and distraction stemming from her headaches, she was limited to performing simple to intermediate work tasks.  (*Id.*)  Based on that finding and the testimony of a vocational expert (*see id.* at 61–66), the ALJ determined plaintiff could perform her past work as a courtesy booth cashier.  (*Id.* at 20–21.)  Accordingly, the ALJ concluded plaintiff was not disabled.  (*Id.*)

A.        "Intermediate" Instructions

At the administrative hearing, the ALJ elicited testimony from plaintiff regarding the demands of her past work.  (Doc. 9-3 at 61–64.)  After hearing that testimony, the vocational expert classified plaintiff's past job as a courtesy booth cashier, which was light, semiskilled work with a specific vocational preparation (SVP) level of four.  (*Id.* at 64); *see* U.S. Dep't of Labor, Dictionary of Occupational Titles ("DOT"), § 211.467-010, 1991 WL 671848 (cashier, courtesy booth).  The ALJ then asked the vocational expert about a hypothetical individual of plaintiff's age, education, and work experience who could perform a range of light work and who was limited to performing "simple and intermediate instructions."  (*Id.* at 65.)  The vocational expert testified that such an individual could perform plaintiff's past job as a courtesy booth cashier.  (*Id.*)  The vocational expert also testified, "I think intermediate work is semiskilled."  (*Id.*)  Based on that testimony, the ALJ found plaintiff could perform her past work as a courtesy booth cashier and denied her claim at step four.  (*Id.* at 20–21.)

Plaintiff argues that the term "intermediate" is not defined by the DOT and that, as a result, the ALJ was required to inquire of the vocational expert to resolve this conflict.  (Doc. 12 at 7–8.) However, the vocational expert explicitly clarified, based on her expertise, intermediate instructions were consistent with semiskilled work and the job of courtesy booth cashier.  (*Id.* at 65.)  The ALJ was entitled to rely on this testimony, *particularly* in light of the fact the term intermediate is not defined in the DOT.  *See Ellison v. Sullivan*, 929 F.2d 534, 537 (10th Cir. 1990); *see also Segovia v. Astrue*, 226 F. App'x 801, 804 (10th Cir. 2007) ("[A]ll kinds of implicit conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation."  (quoting *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000))).

Plaintiff also argues the vocational expert's testimony conflicts with the DOT because the DOT classifies the job of courtesy booth cashier as having GED reasoning, math, and language levels of three, which plaintiff claims requires more than "intermediate" reasoning.  (Doc. 12 at 6.)  However, "GED does not describe specific mental or skill requirements of a particular job, but rather describes the general educational background that makes an individual suitable for the job . . . ."  *Anderson v. Colvin*, 514 F. App'x 756, 764 (10th Cir. 2013); *Mounts v. Astrue*, 479 F. App'x 860, 868 (10th Cir. 2012).  *But cf. Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (stating that a limitation to "simple and routine work tasks" seemed inconsistent with the demands of level three reasoning).  In other words, GED describes the general educational background that would ordinarily make an individual suitable for the job.   The court does not believe there exists a conflict between the vocational expert's testimony that plaintiff was limited to intermediate reasoning and that she could perform her prior work as a courtesy booth cashier.

Because there was no apparent conflict between the vocational expert's testimony and the DOT, the ALJ was not required to resolve any alleged conflict.   *See* SSR 00-4p, 2000 WL 1898704, at *2 (requiring the ALJ to elicit a reasonable explanation from a vocational expert only "[w]hen there is an apparent unresolved conflict" between the vocational expert's testimony and the DOT); *Poppa v. Astrue*, 569 F.3d 1167, 1173 (10th Cir. 2009) (ALJ's failure to question the vocational expert about conflicts between the expert's testimony and the DOT was harmless where no conflict existed).

**B.      Plaintiff's Credibility**

Plaintiff argues that the ALJ erroneously determined that plaintiff's complaints of debilitating pain were not entirely credible.  (Doc. 9-3 at 18–20.)  In support of this finding, the ALJ acknowledged plaintiff's history of chronic headaches and past brain aneurysm but found the objective evidence of

record did not support plaintiff's claims of debilitation.  (*Id.*); *see* 20 C.F.R. § 404.1529(c)(4) (stating that "we will evaluate your statements in relation to the objective medical evidence").

Specifically, the ALJ relied on the findings of neurologist Gautham Reddy, M.D., who examined plaintiff in June 2013. (Doc. 9-3 at 18; Doc. 9-13 at 23–26.)  Dr. Reddy noted that a brain MRI was "essentially normal" and found no evidence of neurological abnormalities.  (Doc. 9-13 at 23–26.)  Based on the lack of objective neurological findings to explain plaintiff's headaches, Dr. Reddy thought they were likely a combination of tension headaches and rebound headaches caused by overuse of analgesic medications.  (Doc. 9-3 at 19; Doc. 9-13 at 2–26.)  Dr. Reddy recommended that plaintiff reduce her use of Tylenol, which he believed would reduce her headaches in the long run. (Doc. 9-13 at 25.)  The ALJ relied on Dr. Reddy's conclusions in finding that plaintiff's headaches—while limiting—could be improved with medication adjustments and were not disabling.  (Doc. 9-3 at 19); s*ee Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988) (in assessing credibility, an ALJ may consider "the consistency or compatibility of nonmedical testimony with objective medical evidence").

The court affords considerable deference to an ALJ's credibility determinations.  *Gay v. Sullivan,* 986 F.2d 1336, 1339 (10th Cir. 1993).  Because the ALJ set forth specific reasons underlying her credibility determination, *see id.* (deferring to ALJ's "reasoned explanation for discounting . . . [claimant's] credibility"), and because substantial evidence in the record supported those reasons, *see Huston,* 838 F.2d at 1133 ("[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings") (footnote omitted), there is no reason for this court to set aside the ALJ's credibility determination.  The ALJ did not err in denying benefits based upon the vocational expert's testimony elicited by a hypothetical question that included only those impairments the ALJ found to be credible.  *See Gay,* 986 F.2d at 1341; *Talley v. Sullivan,* 908 F.2d 585, 588 (10th Cir.1990).

### C.  Plaintiff's "Treating" Physician

Plaintiff claims that the ALJ ignored evidence from her "treating physician."  (Doc. 12 at 13–15.)   The opinion that plaintiff claims the ALJ failed to consider was nurse practitioner Jennifer Sebes's opinion that plaintiff was eligible for a handicapped parking placard.  Ms. Sebes's "opinion" comes from an application plaintiff submitted for a placard in March 2013.  On the application, Ms. Sebes checked two boxes in support of plaintiff receiving a handicapped placard, one indicating plaintiff was disabled and the other indicating plaintiff was limited in her ability to walk 100 feet. (Doc. 9-11 at 72.)

The court first notes that Ms. Sebes is a nurse practitioner—not a treating physician.  *Parks v. Colvin*, No. CIV-13-450-R, 2014 WL 2589310, at *4 (W.D. Okla. June 9, 2014) ("[T]he ALJ properly noted that a nurse practitioner's opinion does not qualify as that of a 'treating physician.'"). Accordingly, Ms. Sebes is not considered an "acceptable medical source" under the regulations.  20 C.F.R. § 404.1502 (defining "acceptable medical source"); *Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007) (explaining that only an acceptable medical source may provide evidence to establish the existence of a medically determinable impairment or a medical opinion, and only an acceptable medical source can be considered a treating source).

Even if Ms. Sebes's "opinion" was entitled to some deference, the ALJ did not ignore this evidence.  Rather, the ALJ expressly considered plaintiff's placard application, giving it little weight because it did not provide any function-by-function evaluation of plaintiff's exertional abilities, nor did Ms. Sebes list any specific impairments that imposed the limitation on walking.  (Doc. 9-3 at 20); s*ee Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008) (holding that doctor's statement on a medical form that provided no information about the nature and severity of the claimant's physical limitations or the activities he could still perform was not a medical opinion); *Chapo v. Astrue*, 682 F.3d 1285,

1289 (10th Cir. 2012) (ALJ reasonably gave no weight to conclusory opinion on Med-9 Form, which lacked any functional findings). The ALJ considered Ms. Sebes's opinion that plaintiff was eligible for a disabled parking placard but reasonably discounted the opinion as unsupported and conclusory.

In sum, the court concludes that the ALJ's decision is supported by substantial evidence in the record and should not be set aside. The state agency doctors and psychologists who reviewed plaintiff's medical records noted that plaintiff had some problems concentrating and following instructions due to her headaches, but she was nonetheless capable of performing simple to intermediate tasks. (Doc. 9-4 at 9–10 (opinion of Junko McWilliams, Ph.D.); *id.* at 10–14 (opinion of James Quinlan, M.D.); *id.* at 38–39, 43–44 (opinion of Lauren Cohen, Ph.D.); *id.* at 39–42 (opinion of Carol Eades, M.D.).) Additionally, examining psychologist Molly Allen, Psy.D., examined plaintiff and found she had some slight difficulty on intermediate recall tasks but no problems with immediate recall or memory disturbance and had adequate focus, judgment, and insight. (Doc. 9-10 at 64–66.) Dr. Allen determined there were no significant signs of cognitive disturbance for plaintiff and further opined that plaintiff could understand, carry out, and remember instructions; respond appropriately to supervisors and coworkers; and handle expected pressures in a work setting. (*Id.* at 66.) The ALJ reasonably considered all of these opinions in finding that plaintiff could perform simple to intermediate work tasks despite her headaches. The court concludes that the ALJ's decision to deny disability benefits to plaintiff is supported by substantial evidence in the record.

**IT IS THEREFORE ORDERED** that that the Commissioner's decision is affirmed. Judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g).

Dated this 16th day of September, 2015, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**